NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VINCENT ABRUZIA, | : | |
| Petitioner, | : | Civil Action No. 09-5773 (DMC) |
| v. | : | O P I N I O N |
| DONALD MEE, et al., | : | |
| Respondents. | : | |

APPEARANCES:

Vincent Abruzia, Pro Se
404399
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Barbara A. Rosenkrans, Assistant Prosecutor
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ 07102
Attorney for Respondents

CAVANAUGH, District Judge

Petitioner, Vincent Abruzia, submitted this petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry
9), and Respondents, Donald Mee and the Attorney General of New
Jersey, have submitted an answer to the petition (docket entry
18), with the available state court record. Petitioner also
filed a reply to the answer (docket entry 19). For the following
reasons, the petition will be denied.

BACKGROUND

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's direct appeal.[1]  See Respondents' Exhibit ("RE") 5.  As summarized in the State's brief on appeal of Petitioner's post-conviction relief ("PCR") motion:

> This case involves two related criminal episodes arising from a drug turf war between the defendant Vincent Abruzia and Andre Reyes.  On April 20, 1996, the defendant's associates shot one of Reyes's compatriots, Eduardo Torres, and robbed four others because they continued to sell drugs on turf the defendant regarded as his.  On April 12, 1996, Loida Gonzalez was walking her dog in the same vicinity when she was shot on the right shoulder because of a fight between the defendant and members of ths same rival gang.

(RE 14 at p. 1).

An Essex County Grand Jury returned an indictment charging Petitioner with various crimes, including murder, for the April 20, 1996 death of Eduardo Torres, and the four robberies.  He was also charged with the April 12, 1996 aggravated assault on Ms. Gonzalez, and was charged with weapons charges with regard to both incidents.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

A jury trial was held from December 1 through 10, 1999. Petitioner was found guilty of reckless manslaughter, and all other homicide/robbery charges regarding the April 20, 1996 incident.  He was acquitted of the charges regarding the April 12, 1996 assault.  On March 7, 2000, Petitioner was sentenced to an aggregate term of life imprisonment plus fifteen years with a 35-year parole disqualifier.

Petitioner appealed.  On February 20, 2004, the Appellate Division affirmed the convictions and sentence.  On May 21, 2004, the New Jersey Supreme Court denied Petitioner's petition for certification.

On or around March 10, 2006, Petitioner filed a motion for post-conviction relief ("PCR") in the trial court.  Petitioner's PCR motion was denied on March 30, 2007 in a written opinion.  On appeal, the denial of PCR was affirmed on August 11, 2008. Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on November 6, 2008.

Petitioner filed his first habeas petition on November 13, 2009.  Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and at Petitioner's request, the petition was deemed withdrawn on March 15, 2010.  On October 21, 2010, after Petitioner re-filed his petition, the case was reopened, and on November 29, 2010, Respondents were ordered to answer.  Respondents filed an answer to the petition and the

available state court record on or about March 16, 2011.  On May

11, 2011, Petitioner filed a reply to the answer.

## C.    Petitioner's Claims

Petitioner cites three grounds for relief (Petition, ¶ 12,

docket entry 9): (1) the prosecutor violated Petitioner's rights

by misconduct during opening and closing statements; (2) the

prosecutor violated Petitioner's rights by failing to fully

disclose an incriminatory statement of petitioner; (3) Petitioner

was denied effective assistance of trial and appellate counsel.

## 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.
>
> With respect to any claim adjudicated on the
> merits in state court proceedings, the writ shall not
> issue unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to,
> > or involved an unreasonable application of,
> > clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on
> > an unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding.

4

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

court may consider the decisions of inferior federal courts.  See

Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard

to whether the state court cites to Supreme Court or other

federal case law, "as long as the reasoning of the state court

does not contradict relevant Supreme Court precedent."  Priester

v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19

(2002)).

Finally, a pro se pleading is held to less stringent

standards than more formal pleadings drafted by lawyers.  See

Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404

U.S. 519, 520 (1972).  A pro se habeas petition and any

supporting submissions must be construed liberally and with a

measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d

Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir.

1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

A.    Prosecutorial Misconduct Claims (Grounds One and Two).

In Ground One of the petition, Petitioner argues that the

prosecutor committed misconduct in opening and closing

statements, arguing:

> The prosecutor made prejudicial comments during his
> opening statement when he referred to the manner of the

petitioner's dress in a way that infringed on his right to remain silent and be proven guilty by the State. The prosecutor made various prejudicial statements during summation when he impermissibly voiced his opinion of both defense and prosecution witnesses, impeached his own witness, and commented on petitioner's failure to testify during trial.

(Pet., ¶ 12(I)).

Petitioner presented these issues to the Appellate Division on direct appeal.  The Appellate Division opinion sets forth the argument:

> Defendant objects to the following comments in the prosecutor's opening statement in which the prosecution characterized defendant as a "businessman":
>
>> And you see a gentleman sitting at counsel table, Vincent Abruzia, dressed in a suit like a businessman.
>>
>> And I assure you he is a businessman.  He's in the business of selling drugs.  And that's what Eddie Torres was killed over.  His business doesn't have a nice store front.  It doesn't have an import/export department.  It has people who work for him and sell drugs for him.
>>
>> And when I said I assure you he's a businessman, we are talking about big business, large amounts of money.
>
> Defendant did not object to the comment when made, but did reference the remarks during a colloquy with the court well after the State had presented most of its direct case.
>
> Defendant also asserts that several statements made during the prosecutor's summation were improper. First, defendant challenges the prosecutor's comment that its witness Mario Vega lied in testifying he did not shoot anyone.  Secondly, defendant claims the prosecutor inappropriately discussed "consciousness of guilt" with the following comments:

On October 30th, when the defendant called
the nail salon where [Guzman] worked, did he
say Jesus is lying about me?  Because you
know if somebody says that I admitted to a
murder, I'm going to call them a liar, a damn
liar.

What did he say?  Jesus is a rat.  What does
that mean?  He told the truth, but he told it
to the authorities.  He's a rat, not a liar.
Think about the choice of words.  Jesus is a
rat.  Yeah, somebody who testifies against
somebody else is a rat.  You know, in the
common parlance of drug dealers, he's a rat.

Absolutely.  He doesn't' call him a liar.
Interestingly, because he didn't lie.  He was
telling the truth . . . .

The prosecutor again referred to defendant's
business practices by calling him the "CEO" who is
"responsible for the actions of his employees."
Finally, defendant argues the prosecution improperly
commented on his failure to testify by posing various
questions to the jury instead of presenting his
argument in "a straight forward fashion."

State v. Abruzia, A-2324-02T4 (N.J. App. Div. Feb. 20, 2004) (RE

5 at pp. 9-11).

On direct appeal, the Appellate Division discussed

Petitioner's arguments regarding the opening and closing

statements and found that there was no implication of a Fifth

Amendment violation; that the prosecutor's characterization of

Petitioner as a "CEO" was "an appropriate response to refute

defense counsel's closing remarks"; and that the prosecutor was

justified in challenging the credibility of his own witness (RE

5).  Most importantly for this Court's review, the Appellate

Division found that the comments by the prosecutor did not

prejudice Petitioner, and were "entirely proper." (RE 5 at 12-13).

Prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." Id. at 642; see also Greer v. Miller, 483 U.S. 756, 765 (1987) (finding that to violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted). It is not enough to show that the prosecutor's conduct was universally condemned. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. See Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

Here, the prosecutor's statements in opening and closing, found to be appropriate under state law, did not infect Petitioner's trial with unfairness as to make the resulting conviction a denial of due process under Donnelly, 416 U.S. at 643. See Gooding v. Wynder, 2012 WL 207068 (3d Cir. Jan. 25,

9

2012).  It is clear that there was sufficient evidence to convict Petitioner, and that the statements were not so prejudicial as to deny Petitioner his due process.  The evidence against Petitioner included ballistics evidence coupled with testimony about motive and the shooting itself; testimony from associates of Petitioner; and Petitioner's own admissions to his brother-in-law.  It is apparent that the conviction was supported by substantial evidence, and the comments by the prosecutor, while perhaps colorful, did not render Petitioner's conviction unconstitutional.

The Appellate Division's decision was consistent with Darden.  Thus, the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claims was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief on this argument.

In Ground Two, Petitioner argues that the prosecutor failed to "provide or fully disclose an incriminatory statement of petitioner during the reciprocal discovery process."  Petitioner notes that defense counsel was never supplied with a statement allegedly made by Petitioner's co-defendant.  (Pet., ¶ 12(II)).

As to Ground Two, the Appellate Division explained:

> Before Edwin Quinones testified at trial, the prosecutor informed defense counsel that Quinones was going to testify that he and defendant had planned to rob Popeye a few days before the shooting.  Defense counsel objected to this testimony, claiming no proper knowledge of such a statement in violation of the rules

10

of discovery.  The trial court ruled that the testimony
was admissible if the prosecutor could prove defense
counsel was given notice of the statement in the
discovery materials.  Soon after, the prosecutor
directed the court to a transcript from Quinones' plea
hearing, during which Quinones stated that he and
defendant had schemed to drive Popeye away, "not
necessarily . . . a robbery, maybe it would have been
an aggravated assault."  The court ruled testimony on
the subject was permissible since the statement by
Quinones encompassed what the prosecution was
attempting to assert at trial.  Quinones thereafter
testified that he and defendant had conversations in
the days leading up to the shooting that "the feud was
on," and agreed they were going to drive Popeye out of
the area by "whatever it took."

There is no dispute that Quinones' testimony,
although partially hearsay, was admissible under our
adoption of the co-conspirator exception, N.J.R.E.
803(b)(5).  Rather defendant argues the testimony was
inadmissible due to an alleged discovery violation.

(RE 5 at pp. 13-14).

In Brady v. Maryland, 373 U.S. 83 (1963), and United States

v. Agurs, 427 U.S. 97 (1976), the Supreme Court held that a due

process violation occurs whenever the government withholds

certain material exculpatory evidence, without regard to the good

or bad faith of the prosecutor.  Citing Brady, the Appellate

Division held:

Defendant's claim that there was a violation of
the prosecutor's discovery obligation is rejected.
Defense counsel had been given a copy of Quinones'
testimony at his plea hearing in advance of trial.  In
that statement, Quinones said that he and defendant
agreed to rob Popey, or harm him in some other way,
days before the shooting actually occurred.  At trial,
the prosecutor elicited essentially the same testimony
from Quinones.  Yet, defendant complains he had no
notice of the manner, i.e., robbery, in which Quinones
claimed he and defendant intended to eliminate the

11

competition.  Not so.  Quinones clearly mentioned
robbery during his plea hearing.  Interestingly, at
trial, Quinones never actually testified that he and
defendant had agreed to "rob" Popeye, but rather stated
in more general terms that they had conversations that
"the feud was on" and agreed they were going to drive
them out of the area by "whatever it took."

Even were we to accept defendant's version that
notice was never given to him, defendant was not
prejudiced since Quinones never testified that he and
defendant specifically planned to commit robbery.  In
fact, he denied that robbery was the pair's specific
objective when questioned by defense counsel.  Indeed,
defense counsel was well aware of the thrust of
Quinones' testimony, that he and defendant agreed in
advance to harm Popeye and his gang.  There was no
error in allowing such testimony.

(RE 5 at pp. 15-16).

Here, the record reveals that defense counsel had the

transcript of Quinones' guilty plea, and Quinones' statement.

However, even if he did not have notice of the statement,

Petitioner was not prejudiced.  The record demonstrates that the

state court's ruling was consistent with Brady, as there was no

discovery violation: the information was inculpatory and defense

counsel had an opportunity to speak to Quinones.  Further, as

Respondents point out, Petitioner was not prejudiced by any

alleged discovery violation because "defense counsel used this

allegedly new information- which added few details to what was

already disclosed by Quinones during his plea- to assist the

defense. ...  In this case, evidence that Quinones allegedly

embellished details about his and the petitioner's plan to drive

Popeye and his crew from their drug turf advanced the defense

mantras that Quinones wanted to avenge the petitioner and was the epitome of a criminal willing to say anything to reap the benefits of his plea agreement." (Answer, p. 30).

The decision of the Appellate Division is neither contrary to, nor an unreasonable application, of governing Supreme Court law, nor is the decision of the Appellate Division unreasonable in light of the evidence before it. Petitioner is not entitled to relief on this claim.

**B.   Ineffective Assistance of Counsel Claims (Ground Three).**

1.   Petitioner's Claims

Petitioner argues in Ground 3 that trial counsel failed to request a cautionary jury instruction on the use of a co-defendant's plea agreement so that it could not be used as substantive evidence of Petitioner's guilt. He also argues that trial counsel failed to remove for cause or further voir dire a juror who had expressed inability to be impartial, and that trial counsel failed to relate a plea offer made by the prosecutor during trial. Finally, Petitioner accuses trial counsel of failing to call as a defense witness an investigator who had taken a victim's statement which was exculpatory to Petitioner, and which was turned over to the State and erased before discovery to Petitioner. With regard to appellate counsel, Petitioner argues that counsel failed to raise the issue of the

13

trial court's denial of Petitioner's motion to sever the counts of the indictment due to prejudicial joinder.  (Pet., ¶ 12(III)).

> 2.    Relevant Supreme Court Precedent

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

With regard to appellate counsel, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. See Evitts v. Lucey, 469 U.S.

15

387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel 's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

3.   Analysis

In the case at issue, the PCR judge, in a written opinion, cited Strickland at length, and denied Petitioner's ineffective assistance of counsel claims (RE 11).  Summarized below, the PCR judge went through each claim, finding that:

16

(1) appellate counsel was not ineffective for failing to raise joinder because there were no factors indicative of prejudicial joinder in Petitioner's case, and counsel's failure to raise the issue did not fall outside of the "wide range of reasonable professional assistance";

(2) appellate counsel was not ineffective for failing to contest the denial of judgment of acquittal did not meet either prong of <u>Strickland</u>;

(3) trial and appellate counsel were not ineffective for failing to object to the voir dire of Juror 14, as that juror was familiar with the location of the crime, and was warned to stay away from the area; failure to object to questioning of this witness did not fall outside of the "wide range of reasonable professional assistance";

(4) trial and appellate counsel were not ineffective for failing to raise the issue of the prosecutor's questioning of witnesses as this did not fall outside of the "wide range of reasonable professional assistance" and the second prong of <u>Strickland</u>, prejudice against Petitioner, was not met;

(5) Petitioner's claim that trial counsel failed to relay an alleged plea offer after trial began was a "mere allegation unsupported by fact";

(6) trial counsel was not ineffective for failing to object to the admission of co-defendants' guilty pleas without a curative instruction as it produced no prejudice to Petitioner and did not satisfy the second prong of <u>Strickland</u>;

(7) trial counsel was not ineffective for failing to call the investigator as a witness and there was no evidence of prosecutorial misconduct regarding the taped statement, as the decision was a strategic decision, and there was no evidence of prejudice to Petitioner to satisfy the second prong of <u>Strickland</u>;

(8) trial counsel's failing to request a limiting instruction on the use of other crimes evidence or that Petitioner was prejudiced by the use of the term "Latin Kings," was a mere allegation unsupported by fact.

(RE 11).

17

The Appellate Division reviewed the PCR judge's decision and examined Petitioner's ineffective assistance of counsel claims on appeal of his PCR motion.  The Appellate Division first fully laid out the case law concerning ineffective assistance of counsel, citing Strickland and State v. Fritz, 105 N.J. 42 (1987).  Then, the Appellate Division held:

> In the present matter, the court concluded there was no showing by defendant that the performance of either his trial counsel or his appellate counsel was constitutionally deficient, and there was no showing that the allegedly deficient performance of counsel prejudiced his defense.  Based on our review of the record, we are satisfied the court's findings are amply supported by the record and its conclusions predicated on those findings are legally sound.  Accordingly, we affirm the order denying defendant's PCR petition substantially for the reasons stated by Judge Fullilove in his written decision on March 30, 2007.

State v. Abruzia, A-5219-06T4 (N.J. App. Div. Aug. 11, 2008) at *8)(RE 15).

This Court has reviewed the record of the case and finds that counsel was not inefficient.  First, the claims set forth by Petitioner regarding counsel's representation do not demonstrate deficient performance.  As noted by the state courts, there is a "strong presumption" that counsel provided "reasonable professional assistance."  See id. (citing and quoting Strickland, 466 U.S. at 689).  For the reasons set forth by the state courts in their Strickland analyses, Petitioner has not demonstrated deficient performance with regard to any of his ineffective assistance claims.  Nor has Petitioner satisfied the

second prong of <u>Strickland</u>, that is, the prejudice prong. A review of the trial transcripts reveals that the evidence in this case included eyewitness identification, and testimony from Petitioner's acquaintances of Petitioner's involvement in the crimes. This Court agrees with the state courts that the case against Petitioner was solid, and that any alleged deficient performance with regard to the claims asserted by Petitioner here did not prejudice Petitioner or change the outcome of the trial.

As the record reveals that the state courts relied on the <u>Strickland</u> standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petitioner's claims will be denied.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

19

right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## CONCLUSION

For the reasons set forth above, the petition will be denied. An appropriate order follows.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 2/15/12

20